IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| JD, LLC, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | Case No. 4:16-cv-00358 |
| | § | |
| FORETRAVEL, INC., | § | |
| FORETRAVEL OF TEXAS, INC., and | § | |
| LYLE REED, | § | |
| | § | |
| Defendants. | § | |

**DEFENDANTS' RESPONSE TO MOTION TO REMAND AND MOTION TO CONSOLIDATE**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

Defendants Foretravel, Inc. ("Foretravel"), Foretravel of Texas, Inc. ("Foretravel-TX") and Lyle Reed ("Reed") (collectively "Defendants"), file this Response to Motion to Remand, Motion to Consolidate pursuant to Rule 42(a)(2) of the Federal Rules of Civil Procedure and Local Rule 42 of the Eastern District of Texas and, in support thereof, respectfully state:

### A. INTRODUCTION

1. Plaintiff's newly filed lawsuit and attempt to remand is nothing more than an attempt at a "do over" on a case that has been pending in the Eastern District of Texas, Lufkin Division for almost two (2) years, has a pretrial next month and will get a trial date shortly thereafter. Indeed, the Plaintiff <u>knew</u> that the proper party to the breach of contract case was JD, LLC when he filed his Original Complaint in federal court on October 24, 2014 as he brought a breach of contract claim. Clearly, someone read the contract prior to bringing a breach of contract claim. Even if Plaintiff failed to review the very contract under which he was suing, Mr.

DEFENDANTS' RESPONSE TO MOTION TO REMAND AND MOTION TO CONSOLIDATE    PAGE 1
US2008 11504936 1

DiSalvatore was extensively questioned in his deposition in January 20, 2016 on the issue of the parties to the contract and Defendants' position that Mr. DiSalvatore was not the proper party to bring a breach of contract claim because the contract was between JD, LLC and Foretravel-TX. Despite this knowledge, Plaintiff chose not to add JD, LLC as a party to the underlying federal lawsuit. Now almost two (2) years later when the underlying federal lawsuit is about to go to trial, Plaintiff brought this lawsuit as an attempt at a second bite at the apple. Plaintiff's gamesmanship becomes even more apparent when it added Reed, the President and Chairman of the Board of Foretravel, who never signed the very contract that is the subject matter of the second lawsuit, as a party defendant merely to obtain jurisdiction in Denton County, Texas to avoid facing a motion to consolidate. Such gamesmanship should not be allowed, and this lawsuit should be consolidated with the pending lawsuit.

### B. FACTUAL BACKGROUND

2. Plaintiff JD, LLC commenced this action against Defendants in the 431st District Court of Denton County, Texas alleging breach of contract (the "Second Lawsuit"). On May 27, 2016, Defendants filed a Notice of Removal (Dkt. 1) removing this matter to the Eastern District Court, Sherman Division. JD, LLC's sole owner is John DiSalvatore.

3. On October 24, 2014, Plaintiff John DiSalvatore sued Defendant Foretravel, Inc. d/b/a Foretravel Motorcoach filed a lawsuit, Civil Action No. 9:14-CV-150, in the Eastern District of Texas, Lufkin Division against Foretravel (one of the same entities named in this lawsuit) for negligence, gross negligence, DTPA, assault, <u>breach of contract</u>, conversion, arising out of an alleged defect in a recreational vehicle purchased from Foretravel (the "Initial Lawsuit") (Ex. 1 – Plaintiffs' Original Complaint). Plaintiff in that case <u>voluntarily</u> filed his case and <u>voluntarily</u> submitted himself to the jurisdiction of the Eastern District of Texas, Lufkin

Division based on diversity despite admitting that Foretravel was a Texas for-profit corporation with its principal place of business in Nacogdoches, Texas. (*Id.* at ¶1.3).

4. In the Initial Lawsuit, Plaintiff made a claim for <u>breach of contract</u> and alleged the following:

- On March 7, 2014, Mr. DiSalvatore discovered that the 2013 RV 6574 unit he had purchased months before was leaking throughout different areas including the windows, walls, ceiling, and floors. These leaks had been allowing water to seep into the walls, panels, and cabinets in the RV undetected for months. As a result of the leakage, Mr. DiSalvatore became worried about a potential mold infestation and paid to have mold tests performed on the RV.
- Mr. DiSalvatore paid out-of-pocket approximately $5,200 to have these tests conducted.
- The first mold report dated May 29, 2014, reported that the findings were "inconclusive" and suggested that a more detailed inspection by a trained professional be undertaken.
- Mr. DiSalvatore had a more detailed report prepared and that mold report dated June 3, 2014, revealed that "extremely high levels" of mold were present. These extremely high level were reported to be present throughout the RV, including the hallway and closet. The mold expert highly recommended that "no one enter [the] RV without proper protection until it ha[d] been professionally remeditated by a licensed company."
- At about the same time as Mr. DiSalvatore had the tests performed on the RV, he began to notice that several members of his family were feeling ill and suffering from frequent headaches, coughing, sneezing, and other symptoms that are typical with mold inhalation. All of these family members had spent considerable time in the RV, while unbeknownst to them, they were breathing in toxic and potentially deadly levels of mold.
- Mr. DiSalvatore soon became worried that the sicknesses of his family were directly caused by the inhalation of mold spores that were present in the RV. To alleviate his worry and concern, he paid to have several more tests run on all of his family members.
- These tests came back and revealed that the entire DiSalvatore family had been contaminated by the mold.
- The lab results also revealed that Mr. DiSalvatore is at risk due to a moderate growth of Enterococcus. Enterococci can cause urinary tract infections, intraabdominal, pelvic, and wound infections, superinfections, and bacteremias.
- Mr. DiSalvatore is now seeking redress for the RV that was sold to him in a defective and unreasonably dangerous condition. In addition, he and his wife are also seeking redress individually and on behalf of their minor children, who have all physically suffered from the harm of breathing in toxic substances over a substantial period of time.

(Ex. 2 – First Amended Complaint).

5. Almost two (2) years after the Initial Lawsuit was filed, Plaintiff JD, LLC sued Defendants Foretravel, Foretravel-TX and Reed in Denton County, Texas for breach of contract and breach of warranty, arising out of the same purchase of the same recreational vehicle from Defendants that forms the basis of the Initial Lawsuit. Plaintiff intentionally named Reed, the President and Chairman of the Board of Foretravel, who did not sign the contract at issue, to obtain jurisdiction in Denton County, Texas.

6. The facts in the Second Lawsuit are both similar and substantially related to the subject matter in the Initial Lawsuit. Indeed, the facts of the breach of contract claim in the Second Lawsuit are as follows:

- On March 7, 2014, Mr. DiSalvatore discovered that the 2013 RV 6574 unit he had purchased (through his single purpose entity, Plaintiff JD, LLC) in July of 2013, was leaking throughout different areas including the windows, walls, ceiling, and floors. These leaks had been allowing water to seep into the walls, panels, and cabinets in the RV undetected for months. As a result of the leakage, Mr. DiSalvatore became worried about a potential mold infestation and paid to have mold tests performed on the RV.
- Mr. DiSalvatore paid out-of-pocket approximately $800 to have these tests conducted.
- The first mold report dated May 29, 2014, reported that the findings were "inconclusive" and suggested that a more detailed inspection by a trained professional be undertaken.
- Mr. DiSalvatore then received a more detailed report prepared and that mold report dated June 3, 2014, revealed that "extremely high levels" of mold were present. These extremely high level were reported to be present throughout the RV, including the hallway and closet. The mold expert highly recommended that "no one enter [the] RV without proper protection until it ha[d] been professionally remediated by a licensed company."
- At about the same time as Mr. DiSalvatore had the tests done on his RV, he began to notice that several members of his family were feeling ill and suffering from frequent headaches, coughing, sneezing, and other symptoms that are typical with mold inhalation. All of these family members had spent considerable time in the RV, while unbeknownst to them, they were breathing in toxic and potentially deadly levels of mold.
- Mr. DiSalvatore soon became worried that the sicknesses of his family were directly caused by the inhalation of mold spores that were present in the RV. To

- alleviate his worry and concern, he paid $5,200 to have several more tests run on all of his family members.
- These tests came back and revealed that the entire DiSalvatore family had been contaminated by the mold.
- The lab results also revealed that Mr. DiSalvatore is at risk due to a moderate growth of Enterococcus. Enterococci can cause urinary tract infections, intraabdominal, pelvic, and wound infections, superinfections, and bacteremias. (One sentence removed).
- JD, LLC is seeking redress for the RV that was sold to him in a defective and unreasonably dangerous condition thereby placing Mr. DiSalvatore's entire family in harm's way, who have all physically suffered from breathing in toxic substances over a substantial period of time. Defendants' actions in designing, manufacturing and selling the RV in the condition provided to Plaintiff is actionable in this suit for breach of contract/warranty.

(Defendants have highlighted the only differences between the Initial Lawsuit and the Second Lawsuit). (Dkt. No. 1)

7. A brief review shows that the Initial Lawsuit and this Second Lawsuit contain nearly identical factual allegations and assert a similar cause of action based on the same facts. The same attorneys also represent JD, LLC and John DiSalvatore in both lawsuits.

8. The Initial Lawsuit has been pending for almost two (2) years. Mr. DiSalvatore has failed (1) to pursue the litigation which is evidenced by the five (5) extensions granted by the Court, (2) to comply with the Federal Rules of Civil Procedure regarding expert designations despite the Court ordering them to comply and giving them another chance to comply, (3) to take timely depositions, (4) to timely answer initial disclosures, (5) to pursue any discovery from Foretravel until the very last day possible, and (6) to properly amend their pleadings prior to the deadline. The following has taken place in the Initial Lawsuit:

- Plaintiff filed an Amended Complaint on July 6, 2015 (after the deadline to amend pleadings);
- Numerous extensions have been granted because Plaintiff failed to meet the deadlines in the Scheduling Order;
- Foretravel has filed a Motion and a Supplemental Motion to Exclude Plaintiffs' Expert Testimony;
- Foretravel filed a Motion for Summary Judgment;
- Foretravel filed a *Daubert* Motion to Exclude Expert Testimony;

- The following depositions have occurred: John DiSalvatore and Lyle Reed (twice); and
- The following depositions will be taken in the next week: James Triana, Sandra DiSalvatore and Curtis Fancher.

9. From Mr. DiSalvatore's own admissions, the damages sought in the Initial Lawsuit and the Second Lawsuit are the exact same damages. (Ex. 2 and Dkt. No. 1) In his response to Foretravel's Motion for Summary Judgment, Mr. DiSalvatore argued that he was the proper party to the breach of contract claim as a third party beneficiary. (Ex. 3 – Response to Motion for Summary Judgment). He also acknowledged that JD, LLC could be a proper party to a breach of contract claim, but refused to add it as a party or seek leave of Court to add JD, LLC as a party. (*Id.*)

10. The Court in the Initial Lawsuit has scheduled a Pre-Trial for July 20, 2016. All Pre-Trial materials are to be exchanged by June 16, 2016. (Ex. 4 – Scheduling Order). At that Pre-Trial Conference, the Court will set the Initial Lawsuit for trial.

11. Given that the Initial Lawsuit and the Second Lawsuit involve the same facts, almost the same parties and the same causes of action, they should be consolidated to avoid two trials, potential conflicting judgments and the expense of conducting additional discovery and another trial.

### C.  LEGAL ARGUMENTS AND AUTHORITIES

1. <u>Motion to Consolidate Pursuant to Federal Rule of Civil Procedure 42(a).</u>

    A.  *Standard of Review*

District Courts have "broad authority to consolidate actions that involve a common question of law or fact." *Luera v. M/V Alberta*, 635 F.3d 181, 194 (5th Cir. 2011). Federal Rule of Civil Procedure 42(a) was "designed and intended to encourage" consolidation when possible. *United States v. Knaner*, 149 F.2d 519, 520 (7th Cir. 1945). Consolidation should be used to

"expedite trial and eliminate unnecessary repetition and confusion." *Miller v. United States Postal Service*, 729 F.2d 1033, 1036 (5th Cir. Tex. 1984) (citing *see In re Air Crash Disaster*, 549 F.2d 1006, 1013 (5th Cir.1977) (quoting *Gentry v. Smith*, 487 F.2d 571, 581 (5th Cir. 1973)).

"Consolidating actions in a district court is proper when the cases involve common questions of law and fact, and the district judge finds that it would avoid unnecessary costs or delay." *St. Bernard Gen. Hosp., Inc. v. Hosp. Serv. Ass'n of New Orleans, Inc.*, 712 F.2d 978, 989 (5th Cir. 1983) (*citing* Fed, R. Civ. P. 42; *In re Dearborn Marine Service, Inc.*, 499 F.2d 263, 270-71 (5th Cir. 1974)). "The district court may order consolidation despite the opposition of the parties." *St. Bernard*, 712 F.2d at 989 (citing *In re Air Crash Disaster at Florida Everglades*, 549 F.2d 1006, 1013 (5th Cir, 1977)). "The fact that a defendant may be involved in one case and not the other is not sufficient to avoid consolidation." *St. Bernard, 111* F.2d at 989 (citing *Bottazzi v. Petroleum Helicopters, Inc.*, 664 F.2d 49 (5th Cir. 1981).

Trial Courts are "urged to make good use of Rule 42(a) of the Federal Rules of Civil Procedure where there is involved a common question of fact and law as to the liability of the defendant in order to expedite the trial and eliminate unnecessary repetition and confusion." *Dupont v. Southern Pacific Co.*, 366 F.2d 193, 195 (5th Cir. 1966).

The cases may be consolidated where all claims by all parties can be disposed by one single judgment. *Harcon Barge Co. v. D & G Boat Rentals, Inc.*, 746 F.2d 278, 286 (5th Cir. 1984)(rehearing granted on separate portion of opinion); *Kuehne & Nagel (AG & Co.) v. Geosource, Inc.*, 874 F.2d 283, 287 n.l (5th Cir. 1989). However, a consolidation in this fashion must not "deprive the parties of any substantive rights that the parties may have had if the actions had proceeded separately." *Harcon Barge*, 746 F.2d at 287,

Furthermore, if consolidation is granted, the order of consolidation "will not be disturbed on appeal except for abuse of discretion." *DitPont v. Southern Pac. Co.*, 366 F.2d 193, 196 (5th Cir. 1966) (citing *Whiteman v. Pitrie*, 220 F.2d 914 (5th Cir. 1955); *Plough v. Baltimore & O.K. Co.*, 172 F.2d 396 (2nd Cir. 1949); *Davis v. Yellow Cab Co. of St. Petersburg*, 220 F.2d 790 (5th Cir. 1955); 5 Moore's Fed. Practice, Par. 42.02, p. 1204 (2nd ed. 1964); *Walker v. Loop Fish & Oyster Co., 211 F.2d 777* (5th Cir. 1954); *Polito v. Molasfy*, 123 F.2d 258 (8th Cir. 1941)).

Factors for the court to consider in deciding if consolidation is appropriate include the following: "(1) whether the actions are pending before the same court, (2) whether common parties are involved in the cases, (3) whether there are common questions of law and/or fact, (4) whether there is risk of prejudice or confusion if the cases are consolidated, and if so, is the risk outweighed by the risk of inconsistent adjudications of factual and legal issues if the cases are tried separately, and (5) whether consolidation will conserve judicial resources and reduce the time and cost of trying the cases separately." *In re Enron Corp. Securities, Derivative & "ERISA" Litigation,* Civ. A. Nos. H–01–3624, H–04–0088, H–04–0087, H–03–5528, 2007 WL 446051, at *1 (S.D.Tex. Feb.7, 2007) (citations omitted). The Court also considers whether the cases are at the same stage of preparation for trial. *Id.* (citation omitted).

B. *The Court Should Grant Defendants Motion to Consolidate.*

All of the above referenced factors are met in this case, and the Initial Lawsuit and the Second Lawsuit should be consolidated. The actions are pending before the same Court – the Eastern District of Texas. There are common parties involved in the cases. The parties in the Initial Lawsuit are as follows:

- John DiSalvatore
- Foretravel, whose President and Chairman of the Board is Lyle Reed.

The parties in the Second Lawsuit are:

- JD, LLC, whose sole member and manager is John DiSalvatore
- Foretravel
- Foretravel-TX, which is a wholly owned subsidiary of Foretravel
- Reed, the President and Chairman of the Board of Foretravel.

Plaintiff cannot try to avoid consolidation by naming two additional defendants who are merely a wholly owned subsidiary and the President and the Chairman of the Board of Foretravel (the only defendant in the Initial Lawsuit).

It is uncontested that the Initial Lawsuit and the Second Lawsuit involve common questions of law and/or fact. In the Initial Lawsuit, Mr. DiSalvatore made a claim for <u>breach of contract</u> alleging the following:

- On March 7, 2014, Mr. DiSalvatore discovered that the 2013 RV 6574 unit he had purchased months before was leaking throughout different areas including the windows, walls, ceiling, and floors. These leaks had been allowing water to seep into the walls, panels, and cabinets in the RV undetected for months. As a result of the leakage, Mr. DiSalvatore became worried about a potential mold infestation and paid to have mold tests performed on the RV.
- Mr. DiSalvatore paid out-of-pocket costs to have these tests conducted.
- The first mold report dated May 29, 2014, reported that the findings were "inconclusive" and suggested that a more detailed inspection by a trained professional be undertaken.
- Mr. DiSalvatore had a more detailed report prepared and that mold report dated June 3, 2014, revealed that "extremely high levels" of mold were present. These extremely high level were reported to be present throughout the RV, including the hallway and closet. The mold expert highly recommended that "no one enter [the] RV without proper protection until it ha[d] been professionally remediated by a licensed company."
- At about the same time as Mr. DiSalvatore had the tests performed on the RV, he began to notice that several members of his family were feeling ill and suffering from frequent headaches, coughing, sneezing, and other symptoms that are typical with mold inhalation. All of these family members had spent considerable time in the RV, while unbeknownst to them, they were breathing in toxic and potentially deadly levels of mold.
- Mr. DiSalvatore soon became worried that the sicknesses of his family were directly caused by the inhalation of mold spores that were present in the RV. To alleviate his worry and concern, he paid to have several more tests run on all of his family members.

- These tests came back and revealed that the entire DiSalvatore family had been contaminated by the mold.
- The lab results also revealed that Mr. DiSalvatore is at risk due to a moderate growth of Enterococcus. Enterococci can cause urinary tract infections, intraabdominal, pelvic, and wound infections, superinfections, and bacteremias.
- Mr. DiSalvatore is now seeking redress for the RV that was sold to him in a defective and unreasonably dangerous condition. In addition, he and his wife are also seeking redress individually and on behalf of their minor children, who have all physically suffered from the harm of breathing in toxic substances over a substantial period of time.

(Ex. 2 – First Amended Complaint).

In the Second Lawsuit, Plaintiff made a claim for breach of contract alleging the following:

- On March 7, 2014, Mr. DiSalvatore discovered that the 2013 RV 6574 unit he had purchased (thorough his single purpose entity, Plaintiff JD, LLC) in July of 2013, was leaking throughout different areas including the windows, walls, ceiling, and floors. These leaks had been allowing water to seep into the walls, panels, and cabinets in the RV undetected for months. As a result of the leakage, Mr. DiSalvatore became worried about a potential mold infestation and paid to have mold tests performed on the RV.
- Mr. DiSalvatore paid out-of-pocket approximately $800 to have these tests conducted.
- The first mold report dated May 29, 2014, reported that the findings were "inconclusive" and suggested that a more detailed inspection by a trained professional be undertaken.
- Mr. DiSalvatore then received a more detailed report prepared and that mold report dated June 3, 2014, revealed that "extremely high levels" of mold were present. These extremely high level were reported to be present throughout the RV, including the hallway and closet. The mold expert highly recommended that "no one enter [the] RV without proper protection until it ha[d] been professionally remediated by a licensed company."
- At about the same time as Mr. DiSalvatore had the tests done on his RV, he began to notice that several members of his family were feeling ill and suffering from frequent headaches, coughing, sneezing, and other symptoms that are typical with mold inhalation. All of these family members had spent considerable time in the RV, while unbeknownst to them, they were breathing in toxic and potentially deadly levels of mold.
- Mr. DiSalvatore soon became worried that the sicknesses of his family were directly caused by the inhalation of mold spores that were present in the RV. To alleviate his worry and concern, he paid $5,200 to have several more tests run on all of his family members.

- These tests came back and revealed that the entire DiSalvatore family had been contaminated by the mold.
- The lab results also revealed that Mr. DiSalvatore is at risk due to a moderate growth of Enterococcus. Enterococci can cause urinary tract infections, intraabdominal, pelvic, and wound infections, superinfections, and bacteremias. (One sentence removed).
- JD, LLC is seeking redress for the RV that was sold to him in a defective and unreasonably dangerous condition thereby placing Mr. DiSalvatore's entire family in harm's way, who have all physically suffered from breathing in toxic substances over a substantial period of time. Defendants' actions in designing, manufacturing and selling the RV in the condition provided to Plaintiff is actionable in this suit for breach of contract/warranty.

(Dkt. No. 1).

(For ease of reference, Defendants have highlighted the only differences in the allegations).

Given that there are common facts and both cases are for breach of contract, the cases should be consolidated for trial.

As both breach of contract cases arise from the purchase of the same RV, all of the remaining factors to be considered by Court favor consolidation of the two cases. Since the sale of the same RV is the basis for both actions, there is no risk of prejudice or confusion. Furthermore, the failure to consolidate the cases could result in inconsistent adjudications of factual and legal issues if the cases were tried to separate juries in separate courts. Finally, consolidation would serve the purposes of judicial economy, as well as reduce the time and expense of the parties and the non-party witness in this case, where same testimony will be required by most of the same party and non-party witnesses on the issue of liability by (a) permitting discovery to proceed by taking depositions and conducting written discovery in one case, rather pursuing parallel discovery in two cases, and (b) trying the case once, to a single jury, rather than twice, to two juries.

2. <u>Motion to Consolidate Pursuant to Local Rule 42 of the Eastern District of Texas.</u>

The Local Rules of the Eastern District of Texas also address consolidation of two (2) cases. Local Rule 42 states as follows:

> **LOCAL RULE CV-42 Consolidation; Separate Trials**
> **Consolidation of Actions.**
> (a) **Duty to Notify Court of Collateral Proceedings and Re-filed Cases.** Whenever a civil matter commenced in or removed to the court involves subject matter that either comprises all or a material part of the subject matter or operative facts of another action, whether civil or criminal, then pending before this or another court or administrative agency, or previously dismissed or decided by this court, counsel for the filing party shall identify the collateral proceedings and/or re-filed case(s) on the civil cover sheet filed in this court. The duty to notify the court and opposing counsel of any collateral proceeding continues throughout the time the action is before this court.
> (b) **Consolidation - Multiple Judges Involved.** Upon the assignment of related actions to two or more different judges with the district, the affected judges may, in their discretion, agree to assign the related actions to one judge.

Defendants believe that this Local Rule and the Federal Rules of Civil Procedure require this Court to consolidate this action with the Initial Lawsuit currently pending in the Eastern District of Texas, Lufkin Division. Defendants notified Plaintiff and the Court of the related case on its Civil Cover Sheet.

3. <u>Response to Motion To Remand.</u>

Plaintiff's Motion to Remand should be denied as an obvious attempt to avoid consolidation and as a pitiful attempt to get a "do over" on a case it has failed to pursue over the last two (2) years. Plaintiff's sole owner and managing member, John DiSalvatore, <u>voluntarily</u> submitted himself to the jurisdiction of the Eastern District of Texas when he <u>voluntarily</u> filed a the Initial Lawsuit alleging breach of contract claim in the Eastern District of Texas, Lufkin. For all the reasons discussed above, the Initial Lawsuit and the Second Lawsuit involve the same facts, the same RV, the same witnesses, the same contract, the same documents, and the same counsel. As such, they should be tried to the same jury – the very jury in Lufkin, Texas where John DiSalvatore <u>voluntarily chose</u> to file the Initial Lawsuit.

Plaintiff's attempt at a second bite at the apple is clear and obvious. In the Initial Lawsuit, John DiSalvatore <u>voluntarily</u> submitted himself to the Eastern District of Texas, Lufkin Division based on diversity despite acknowledging that Foretravel had a principal place of business in Texas. Then after years of discovery (or lack thereof), JD, LLC files a breach of contract claim naming Reed, who never signed any agreement and is merely the President and Chairman of the Board of Foretravel, as a party Defendant because he lives in Denton County, Texas. When Defendants removed the case to the Eastern District of Texas (the court of choice for Mr. DiSalvatore) and advised the Court on the civil cover sheet of the related case, suddenly JD, LLC seeks remand to the Denton County Court. Plaintiff's motives and intentions are clear – avoid judicial efficiency at all costs, waste time, waste money and complicate a very clear, simple, straightforward case. For these reasons, Plaintiff's Motion to Remand should be denied.

## **PRAYER**

For these reasons, Defendants Foretravel, Inc., Foretravel of Texas, Inc. and Lyle Reed ask the Court to deny Plaintiff's Motion to Remand and consolidate this case with Civil Action No. 9:14-CV-150, in the Eastern District of Texas, Lufkin Division, and award Defendants all other relief the Court deems appropriate.

Respectfully submitted,

By: /s/ Jason W. Fatheree

**Jason W. Fatheree**
State Bar No. 24027162
jfatheree@kilpatricktownsend.com
**Justin P. England**
State Bar No. 24063955
jengland@kilpatricktownsend.com

**KILPATRICK TOWNSEND & STOCKTON LLP**
2001 Ross Avenue, Suite 4400
Dallas, Texas 75201
Telephone: (214) 922-7100
Facsimile: (214) 922-7101

**ATTORNEYS FOR DEFENDANTS FORETRAVEL, INC., FORETRAVEL OF TEXAS, INC., and LYLE REED,**

## CERTIFICATE OF CONFERENCE

1. Counsel for Defendants has complied with the meet and confer requirement in Local Rule CV-7(h).
2. Plaintiff opposes this motion.
3. A telephone conference took place on June 2, 2016 between Jason Fatheree, attorney for Defendants, and Marcus R. Spagnoletti, attorney for Plaintiff. Plaintiff is opposed to motion because the deadline to designate has passed.
4. Discussions have conclusively ended in an impasse, leaving an open issue for the Court to resolve.

/s/ Jason W. Fatheree
Jason W. Fatheree

## **CERTIFICATE OF SERVICE**

  This is to certify that a true and correct copy of the above and foregoing has been electronically filed with the Clerk of the Court and served upon all counsel via CM/ECF on this the 2nd day of June 2016.

                /s/ Jason W. Fatheree
                Jason W. Fatheree